IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| THOMAS C. HARDT, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 08-00436-REB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM DECISION** |
| COMMISSIONER, SOCIAL SECURITY | ) | **AND ORDER** |
| ADMINISTRATION, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Now pending before the Court is Thomas C. Hardt's Petition for Review (Docket No. 1),

seeking review of the Social Security Administration's decision to deny his claim for disability

insurance benefits.  The action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully

reviewed the record and otherwise being fully advised, the Court enters the following

Memorandum Decision and Order:

## I.  ADMINISTRATIVE PROCEEDINGS

On December 23, 2005, Thomas C. Hardt ("Petitioner") applied for supplemental security

income, alleging disability beginning December 23, 2005.  (AR 70-74).  Petitioner's claim was

initially denied on or around April 21, 2006 (AR 58, 66) and, again, on reconsideration on or

around July 6, 2006 (AR 57, 61-65).  On August 7, 2006, Petitioner timely filed a Request for

Hearing before an Administrative Law Judge ("ALJ").  (AR 59).  On May 3, 2007, ALJ

Hayward Reed postponed Petitioner's hearing, allowing Petitioner to obtain counsel.  (AR 317-

**MEMORANDUM DECISION AND ORDER - 1**

324).  Ultimately, on February 6, 2008, ALJ Michael Kilroy held a hearing in Boise, Idaho, at

which time Petitioner, represented by attorney Nick Huntsman, appeared and testified.  (AR 325-

366).  A vocational expert, Polly Peterson, also appeared and testified during the same February

6, 2008 hearing.  (AR 356-364).

On March 29, 2008, the ALJ issued a decision, denying Petitioner's claims, finding that

Petitioner was not disabled within the meaning of the Social Security Act.  (AR 13-26).

Petitioner timely requested review from the Appeals Council on May 12, 2008 (AR 12).  On

September 5, 2008, the Appeals Council denied Petitioner's request for review (AR 5-8), making

the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner timely files the instant action,

arguing that the decisions of the ALJ and Appeals Council "are not supported by substantial

evidence" and without consideration of "crucial evidence submitted in a timely fashion with

regard to [Petitioner's] impairments."  *See* Pet. for Review, p. 3 (Docket No. 1).  Specifically,

Petitioner asserts that the ALJ (1) failed to properly assess Petitioner's residual functional

capacity; (2) failed to properly evaluate the opinions of Petitioner's examining physicians; and

(3) failed to properly evaluate Petitioner's credibility.  *See* Pl.'s Brief in Supp. of Pet. for

Review, p. 2 (Docket No. 15).  Petitioner requests that the Court reverse the ALJ's decision and

order the payment of benefits or, alternatively, remand the case for further medical development

and proceedings.  *See id*. at p. 12; *see also* Pet. for Review, pp. 4-5 (Docket No. 1).

## II.  STANDARD OF REVIEW

It is undisputed that the burden of proof rests upon Petitioner to establish an entitlement to

disability benefits.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  In evaluating the

**MEMORANDUM DECISION AND ORDER - 2**

evidence at an administrative hearing, the ALJ must follow a five-part sequential process.  20

C.F.R. §§ 404.1520, 416.920.  Notably, the second part of that process involves a determination

of whether the claimant has a "severe impairment."  20 C.F.R. § 416.905(a).  If no "severe"

impairment is found, the claimant will be found not to be disabled for the purpose of conferring

benefits.  20 C.F.R. §§ 404.1520(c), 416.920(c).

To be upheld, the Commissioner's decision must be supported by substantial evidence

and based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981

F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  The

ALJ's findings as to any question of fact, if supported by substantial evidence, are conclusive.

42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981).  In other words, if there

is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when

there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374

(9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human

Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less

than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975);

*Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or

considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole

to determine whether it contains evidence that would allow a reasonable mind to accept the

conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.

**MEMORANDUM DECISION AND ORDER - 3**

The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III.  DISCUSSION

**A.     Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a five-step sequential process in determining whether a person is disabled within the meaning of the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not

**MEMORANDUM DECISION AND ORDER - 4**

a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA,

disability benefits are denied, regardless of how severe his physical/mental impairments are and

regardless of his age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If

the claimant is not engaging in SGA, the analysis proceeds to the second step. Here, the ALJ

concluded that Petitioner has not engaged in SGA since December 23, 2005. (AR 18).

The second step requires the ALJ to determine whether the claimant has a medically

determinable impairment, or combination of impairments, that is severe and meets the duration

requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination

of impairments is "severe" within the meaning of the Social Security Act if it significantly limits

an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).

An impairment or combination of impairments is "not severe" when medical and other evidence

establish only a slight abnormality or a combination of slight abnormalities that would have no

more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921.

If the claimant does not have a severe medically determinable impairment or combination of

impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the

ALJ found that Petitioner had the following severe impairments: type 2 diabetes mellitus with

some distal sensory neuropathy in the feet and cervical spurring without radiculopathy. (AR 18).

The third step requires the ALJ to determine the medical severity of any impairments; that

is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part

404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer

is yes, the claimant is considered disabled under the Social Security Act and benefits are

awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor

**MEMORANDUM DECISION AND ORDER - 5**

equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  *Id*.  Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments.  (AR 19).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  20 C.F.R. §§ 404.1545, 416.945.  Further, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ determined that Petitioner has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 416.967(c) and, therefore, is able to perform his past relevant work as an adult video and bookstore owner - both as generally and actually performed.  (AR 17-24).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  If the claimant is able to do other work, he is not disabled; if the claimant is not able

**MEMORANDUM DECISION AND ORDER - 6**

to do other work and meets the duration requirement, he is disabled.  Here, even though the ALJ

found that Petitioner is capable of performing his past relevant work, the ALJ also found that

Petitioner's acquired work skills from past relevant work were transferrable to other occupations,

existing in significant numbers in the national economy, including cashier-checker and order

clerk .  (AR 25).  Accordingly, the ALJ determined that Petitioner has not been under a

disability, as defined in the Social Security Act, since December 23, 2005 - the date Petitioner

filed his application for supplemental insurance income.  (AR 26).

**B.**     **Analysis**

Petitioner challenges the ALJ's denial of disability benefits in three separate respects.

First, Petitioner argues that the ALJ improperly evaluated Petitioner's residual functional

capacity.  *See* Pl.'s Brief in Supp. of Pet. for Review, p. 4 (Docket No. 15).  Second, Petitioner

argues that the ALJ improperly rejected the opinions of Petitioner's examining physicians,

namely Dr. Martha Cline and Dr. Thomas Coolidge.  *See id*.  Third, Petitioner argues that the

ALJ did not provide clear and convincing evidence for rejecting Petitioner's testimony.  *See id*.

1.          <u>Petitioner's Residual Functional Capacity</u>

An applicant's residual functional capacity is an assessment of that individual's ability to

do sustained work-related physical and mental activities in a work setting on a regular and

continuing basis - in other words, what an individual can still do despite his limitations.  *See* SSR

96-8P.  In assessing an applicant's residual functional capacity, the ALJ must consider all of the

relevant evidence in the case record, including information about the individual's symptoms and

any "medical source statements" submitted by an individual's treating source or other acceptable

medical sources.  *See id*.  Here, Petitioner takes issue with the ALJ's conclusion that Petitioner

**MEMORANDUM DECISION AND ORDER - 7**

has the residual functional capacity to perform medium work[1] (AR 20), arguing that "the ALJ

failed to consider all of [Petitioner's] limitations and restrictions, failed to support his assessment

with substantial evidence, and failed to resolve[ ] inconsistencies between his assessment and the

opinions of medical sources throughout the record."  *See* Pl.'s Brief in Supp. of Pet. for Review,

p. 5 (Docket No. 15).  The Court does not share Petitioner's concerns.

> a.      *Petitioner's Alleged Exertional Limitations*

Petitioner's challenge to the ALJ's residual functional capacity assessment is centered on

the ALJ's handling of Dr. Martha Cline's opinions.  *See id.* at pp. 5-7.  Specifically, Petitioner

claims that the record does not support the ALJ's conclusion that Petitioner is capable of

performing medium work, particularly when considering that Dr. Cline opined that Petitioner

"could not do any significant physical work."  *See id.* at p. 5 (citing AR 282).[2]  It is true that Dr.

Cline considered Petitioner to be more limited than the ALJ ultimately found; however, Dr.

Cline's opinions in this respect should not be considered dispositive on the issue of Petitioner's

residual functional capacity.

First, as the ALJ pointed out, Dr. Cline is not Petitioner's treating physician.  (AR 23).

Instead, there is no dispute that Dr. Cline visited with Petitioner on only one occasion, thus

diluting her findings.  (AR 277-283); *see also* (AR 23) ("Dr. Cline is not a treating source.  She

examined [Petitioner] only once and her opinion is not entitled to controlling weight in regards

---

[1]  "Medium work" involves "lifting no more than 50 pounds at a time with frequent
lifting or carrying of objects weighing up to 25 pounds."  *See* 20 C.F.R. § 416.967(c).

[2]  At the outset, the import of Dr. Cline's use of the modifying term "significant" when
describing Petitioner's alleged exertional limitations (*see* AR 282 (". . . I think he could not do
any significant physical work.")) is not entirely clear and, as a result, not particularly helpful
when determining the extent of Petitioner's physical abilities.

**MEMORANDUM DECISION AND ORDER - 8**

to the nature and severity of [Petitioner's] alleged work-related limitations was in the context of

a one-time examination.").  Regardless, it is important to acknowledge that Dr. Cline's overall

"impression" that Petitioner suffers from Type II diabetes mellitus with "some evidence of a

distal sensory neuropathy" (AR 282) was nonetheless shared by the ALJ when discussing

Petitioner's severe impairments (*see supra* at p. 5).

  Second, Dr. Cline's opinions are not undisputed.  Dr. Randall Hutchins, for example, saw

Petitioner on a number of occasions, concluding that, while Petitioner suffered from Type II

diabetes, (1) his treadmill stress test was normal (AR 23 (citing AR180)); (2) he exhibited no

neurological symptoms other than "some dizziness with rapid arising" (AR 181-82, 216-17);

(3) he had no end-organ damage (AR 182, 217); and (4) his strength was recorded out as "5/5+"

(*see id.*).  Additionally, Dr. Thomas T. Coolidge (and later confirmed by Ward E. Dickey, M.D.

(AR 307)) believed Petitioner to be capable of (1) lifting 20 pounds occasionally (AR 300); (2)

lifting 10 pounds frequently; (3) standing and/or walking for six hours in an eight-hour workday

(with an assistive device, if necessary) (*see id.*); (4) sitting about six hours in an eight-hour

workday (*see id.*); and (5) pushing and/or pulling without limitation (*see id.*).[3]

---

[3] Petitioner is not altogether correct when stating that Dr. Coolidge "found that
[Petitioner] had the ability to perform light work, at best."  *See* Pl.'s Brief in Supp. of Pet. for
Review, p. 6 (Docket No. 15).  Actually, in performing his "Physical Residual Functional
Capacity Assessment," Dr. Coolidge stated in part:

> [H]e is not credible about the statements made to the doctor on the
> review of systems.  They are not entirely accurate as the medical
> records show.  The [claimant's] RFC was reduced to a light and this
> is giving the [claimant] the benefit of the doubt [with respect] to
> some pain in light of his cervical x-ray, obesity and some level of his
> pain.

(AR 305).  Dr. Coolidge also determined that Petitioner's "[physical evaluation] showed no
abnormalities" (AR 300), Petitioner has no "postural limitations" (AR 301), and Petitioner is
limited in overhead reaching, but unlimited from the eye level and below (AR 302).

**MEMORANDUM DECISION AND ORDER - 9**

Third, and arguably most telling, it is Petitioner himself who further succeeds in

contradicting Dr. Cline's assessment of his physical limitations (namely, that Petitioner "could

not do any significant physical work"), stating in early 2006 when "[d]escrib[ing] what [he]

do[es] from the time [he] wake[s] up until going to bed:"

> Wake up, use restroom, eat, watch TV, do some chores, help friends
> and family do cleaning and stuff, occasionally shower, eat dinner,
> occasionally help others with errands, i.e., paying bills, hang out at
> Recovery Club and play pool and sometimes fish.

(AR 84).  Moreover, in response to questions during the February 6, 2008 hearing, Petitioner

clearly communicated his perceived ability to lift and carry upwards of 50 pounds:

> Q:      Okay.  How about lifting things, can you, can you lift weight?
>         How much weight do you feel like you can lift at one time, lift
>         and carry?
>
> A:      Oh, I don't know, I don't know, I could probably lift 50
>         pounds.
>
> Q:      Okay.
>
> A:      I have pretty big arms, I'd –
>
> Q:      So no problems really lifting things?
>
> A:      No, I probably can do that.

(AR 338-339).[4]

---

[4]  The Court is not persuaded by Petitioner's counsel's argument that "[t]his statement is
far from definitive as to what Mr. Hardt can lift.  Mr. Hardt was not sure and was just making a
guess and the ALJ did not discuss the matter further to determine if this initial guess was
accurate."  *See* Pl.'s Brief in Supp. of Pet. for Review, p. 6 & 9 (Docket No. 15).  First, it strikes
the Court as disingenuous for Petitioner to ask the Court to accept certain statements made
during the February 6, 2008 hearing and/or to medical providers, but not others.  Second, in the
Court's mind, Petitioner's work history (e.g., a bookstore owner (AR 93), yard work/odd jobs
(AR 95), driving a catering truck (AR 181), driving an ice cream truck (AR 244), and appliance
repair (279)) sufficiently familiarized Defendant with what it means to handle 50 pounds.
Indeed, when completing a "Disability Report-Adult" on September 15, 2006, Petitioner had
previously commented on lifting 25-50 pounds when "lift[ing] boxes of merchandise [and]
mov[ing] washers [and] dryers."  (AR 117).  The Court will take Petitioner at his word in these
respects when responding to questions posed during the February 6, 2008 hearing.

**MEMORANDUM DECISION AND ORDER - 10**

Later, when the ALJ discussed with Petitioner his work history, it became evident that

Petitioner's alleged symptoms do not totally disable him from physical work, as Dr. Cline may

have believed.  Petitioner confirmed as much when answering the ALJ's questions about

potentially working as a cashier:

> Q:    . . . . I understand from what you're telling me, that you can't
>        be on your feet very much.  What would prevent you from,
>        from working in, whether you owned it or not doesn't matter,
>        working as a cashier at, at a bookstore or some other type of
>        store whether you either did rentals or sales?
>
> A:    The fact that my feet, is all, I mean, I, I, I can, I could do it, I
>        mean, I, I just, you know – I mayn't [sic] be able to get a job.
>
> Q:    Okay. Have you ever gone to vocational rehabilitation to talk
>        to them about whether there's, jobs out there that might work
>        for you?
>
> A:    No, I never had no money to fill, you know – I – it's just –
>
> Q:    Well, they don't cost any money.  Let's – that's – all the
>        States in the United States have a, have a department called,
>        and they call it a little different from State to State, but, but
>        they provide vocational training and assistance and match-ups
>        with people who have problems, the types of work they might
>        be able to do with their problems.  Has, have you ever been
>        involved with –
>
> A:    No.
>
> Q:    – Something like that?
>
> A:    No, I haven't.

(AR 354-355).

With all of the above-mentioned findings in mind, the ALJ acknowledged Petitioner's

inability to stand for long periods of time, but tempered that conclusion, stating that "the

evidence fails to support [Petitioner's] allegations that his symptoms totally disable him from all

**MEMORANDUM DECISION AND ORDER - 11**

work . . . ." (AR 21).  This Court is not tasked with making a disability determination; rather, it

must ensure that the ALJ's findings are supported by the record.  In undergoing such a review, it

cannot be said that the ALJ disregarded Petitioner's medical history - including Dr. Cline's or

Dr. Coolidge's.  For these reasons, it would be incorrect to state that the ALJ's findings are

without justification.  The record supplies substantial evidence of the legitimate reasons

supporting the ALJ's decision in this respect which the Court is not in a position to interfere.

          b.          *Petitioner's Alleged Non-Exertional Limitations*

          Petitioner goes on to state that "[t]he ALJ also failed to discuss why he was not including

[Petitioner's] non[-]exertional limitations in his RFC."  *See* Pl.'s Brief in Supp. of Pet. for

Review, p. 6 (Docket No. 15).  Petitioner premises this argument on his self-described "possible"

depression and daytime sleepiness.  *See id*. at pp. 6-7.  Petitioner's argument is misplaced.

          While recognizing that Dr. Cline noted that "[Petitioner] was depressed and had

attempted suicide two to three years ago" (AR 22 (citing AR 280 & 282)), the ALJ contrasted

these statements against the absence of similar complaints and treatment for depression during

this same time period.  (AR 22).[5]  In fact, the opposite appears to be true - the existence of

medical findings affirmatively discounting Petitioner's allegations of depression.  For example,

_____

          [5]  On this point, Petitioner dwells on the ALJ's incorporation of an attending physician's
treatment note suggesting that Petitioner's "affect and mood were within normal limits" (AR 22),
arguing:

> However, the ALJ uses the opinion of an attending physician who
> examined Mr. Hardt briefly for a sore throat, to further justify his
> finding that Mr. Hardt does not suffer from depression. . . . .  There
> are no further comments and this physician was not examining Mr.
> Hardt for any possible mental impairments.

*See* Pl.'s Brief in Supp. of Pet. for Review, p. 7 (Docket No. 15).  Petitioner misses the point.
Simply put, there appears to be no support in the record for Dr. Cline's assessment concerning
Petitioner's alleged mental impairments.  Indeed, other than Dr. Cline, Petitioner offers none.

**MEMORANDUM DECISION AND ORDER - 12**

it seems that, throughout the process, Petitioner did not consider his mental condition a basis for

arguing disability; instead the focus of his disability application and corresponding reports

appears to be related to his diabetes.  This is supported by Dr. Maximo J. Callao, Ph.D.'s April

20, 2006 "Psychiatric Review Technique" where Dr. Callao opines:

> At the claimant's [physical examination], however, his friend that
> went with him stated that he is so depressed and has attempted
> suicide.  There is absolutely no evidence to this effect and is in
> contrast with two years of ER visits at two different hospitals that
> show no [history] of psych[iatric] complaints, [treatment],
> [medication] or otherwise.  He says that he has gained 30 [pounds] in
> the last year and this is again contrary to records.  His performance
> during the [clinical examination] was not fully cooperative and the
> claimant and his friend are quite vested in obtaining income for him.
> He demonstrated 25/30 on his MMSE.[6]  As recent as 11/2005 the
> claimant was noted to be smiling and happy as well as have a normal
> psych[iatric] affect.  He has no record whatsoever of any psych[iatric]
> [diagnosis] until the allegations by the friend at the neuro [clinical
> examination].  Claimant is not found to have significant limitations
> to a depressive [disorder].[7]

(AR 296).[8]  Petitioner's historical failure to seek treatment for his alleged depression, or even

consistently report any such complaints, compromises any claim that he is disabled by virtue of

his alleged depression.  *See, e.g.*, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("That

[the claimant's] pain was 'not severe enough to motivate [her] to seek [these forms of]

treatment,' even if she sought some treatment, is powerful evidence regarding the extent to

which she was in pain." (Internal citation omitted)).

---

[6]  The Mini-Mental Examination ("MMSE") is a brief, 30-point questionnaire test that is used to screen for cognitive impairment.

[7]  Although citing to Dr. Callao's reference to Petitioner's "possible depression" and "mild" "difficulties in maintaining concentration, persistence, or pace" (*see* Pl.'s Brief in Supp. of Pet. for Review, p. 7 (Docket No. 15) (citing AR 287 & 294)), Petitioner neglects to fully incorporate all of Dr. Callao's findings in his supporting brief.

[8]  Dr. Callao's findings (and the evidence in the file) were reviewed and affirmed by Dr. Dave Sanford, Ph.D. on June 28, 2006.

**MEMORANDUM DECISION AND ORDER - 13**

Petitioner's alleged sleep-related disorder was similarly discounted.  Petitioner correctly

points out, that Kathy Weaver relayed to Dr. Cline that Petitioner (1) sleeps very poorly at night,

(2) sometimes awakens feeling short of breath, (3) experiences nocturia five to six times nightly,

(4) has apneic spells when sleeping, and (5) has excessive daytime sleepiness.  (AR 278).

However, such third-person accounts (like self-reports) do not equate to a medical diagnoses of a

sleeping disorder that may negatively affect one's residual functional capacity.  (AR 278).  Thus,

the ALJ actually (and correctly) pointed out that "Dr. Cline considered probable obstructive

sleep apnea but made no definite diagnosis because it was solely based on self-reported history."

(AR 23).  Despite this reality, as with Petitioner's alleged depression, the record is not only void

of any history, treatment, or prescribed medication associated with any sleep-related disability,

but, instead, reflects (1) no restriction of activities of daily living, (2) no difficulties in

maintaining social functioning, (2) only mild difficulties in maintaining concentration,

persistence, or pace, and (4) no episodes of decompensation of extended duration. (AR 294).

Simply put, the ALJ's exclusion of Petitioner's alleged daytime sleepiness from any

residual functional capacity assessment is not a basis to grant Petitioner's request for review.

This conclusion, while potentially at odds with another's interpretation of the same record, is

nonetheless supported by specific and legitimate reasons, consistent with evidence in the record.

As a result, the ALJ's decision will not be disturbed here.

2.      Petitioner's Credibility

Petitioner finally takes issue with the ALJ's challenge to his credibility.  *See* Pl.'s Brief in

Supp. of Pet. for Review, pp. 10-12 (Docket No. 15).  The ALJ is in the best position to make

such credibility determinations and, for this reason, the ALJ's credibility determinations are

entitled to great weight.  *See Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990).  In

**MEMORANDUM DECISION AND ORDER - 14**

evaluating a claimant's credibility, the ALJ may consider a claimant's reputation, inconsistencies

either in testimony or between testimony and conduct, daily activities, past work record, and

testimony from physicians and third parties concerning the nature, severity, and effect of the

alleged symptoms. *See Light v. Social Security Admin.*, 119 F.3d 789, 791 (9th Cir. 1997).  In

short, "[c]redibility decisions are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604

(9th Cir. 1989).  Here, the ALJ provided sufficient reasons for calling into question Petitioner's

credibility.  It should be noted, however, that to reject a claimant's testimony, the ALJ must

make specific findings stating clear and convincing reasons for doing so.  *See Holohan v.*

*Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

At the administrative hearing, Petitioner testified that, as a result of his alleged disability,

he suffered from intense pain in his legs.  (AR 335) ("It's just like the worse [sic] cramp that I

ever have, I mean, it's, I – it hurts bad, it brings tears to my eyes, it hurts so bad.").  The ALJ

ultimately discounted Petitioner's testimony, finding that "[he] expressed disinterest in regular

exercise and changing his diet . . . ."  (AR 21).  There is no real dispute that Petitioner's diabetes

(which the ALJ already concluded to be a severe impairment (AR 18)) is receptive to exercise

and a proper diet.  In fact, Dr. Cline herself stated: "It appears that [Petitioner] could benefit

from a coordinated attempt of providing good medical care as *all* of these conditions may be able

to be treated to some extent.  (AR 283) (Emphasis added).  Yet, the record supports the ALJ's

conclusion that Petitioner is not particularly interested in making these lifestyle changes:

- At a November 28, 2005 hospital visit, Dr. Hutchings commented that Petitioner has "Type 2 diabetes mellitus in which he does not watch his diet or treat the pain, and also has no idea what his blood sugars run or his hemoglobin A1C or lipids are."  (AR 181).

- In the February 10, 2006 "Function Report-Adult," Petitioner himself notes that he "don't [sic] care for feet and eyes because of no medical

**MEMORANDUM DECISION AND ORDER - 15**

coverage bad [sic] due to diabetes" and "don't take prescribed
Glucophage regularly either don't [sic] have or don't like to take pills."
(AR 86)

- During the April 20, 2006 Residual Functional Capacity Assessment,
Dr. Coolidge determined that Petitioner "is not credible" because, in
part, "[Petitioner] states that he does not have money for [his
medication,] however he is able to find enough money to smoke a pack
a day."  (AR 304).[9]

- During the April 20, 2006 Psychiatric Review Technique, Dr. Callao
opined that Petitioner "is non-compliant with almost all medical advice
and reports that he simply does not have the money however he has the
money to smoke over a pack of cigarettes a day." (AR 296).

- At an October 8, 2007 consultation, Jenny Guivens MS, RD, LD stated
that Petitioner "is not interested in attending the Diabetes Self-
Management classes at this time and is resistant to lifestyle change."
(AR 309).

- At an October 22, 2007 follow-up consultation, Dr. Guivens found that:
(1) Petitioner does not participate in regular exercise; (2) Petitioner eats
2 meals/day, high in fat and refined grains, low in fiber, fruits and
vegetables; and (3) Petitioner is not interested in attending Diabetes
Self Management classes at this time and is resistant to change.  (AR
308).  As a consequence, Dr. Guivens concluded that she "do[es] not
expect strong adherence to the recommendations."  *See id.*[10]

Petitioner's retort that his "financial inability to maintain consistent treatment and to

consistently take his medication as prescribed" (*See* Pl.'s Brief in Supp. of Pet. for Review, p. 12

---

[9] Dr. Coolidge went on to say that Petitioner's "performance on his [clinical
examination] was sub-par and he is not credible about the statements made to the doctor on the
review of systems.  They are not entirely accurate as the medical records show."  (AR 305).

[10] Petitioner points to this same treatment note as evidencing that Petitioner "had cut
down on sweets and switched to diet soda as recommended."  *See* Pl.'s Brief in Supp. of Pet. for
Review, pp. 10-12 (Docket No. 15) (citing AR 308).  Even when not considering that such a
statement may constitute a self-serving account of Petitioner's new-and-improved diet (which
theALJ is already challenging for lack of credibility), Petitioner ignores the balance of the
sentence, stating: "although Kathy states he still eats sherbet and shortcake."  (AR 308).

**MEMORANDUM DECISION AND ORDER - 16**

(Docket No. 15)) is without merit.  "Where a claimant provides evidence of a good reason for not taking medication for [his] symptoms, [his] symptom testimony cannot be rejected for not doing so."  *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  Here, however, the requisite "good reason" does not exist, particularly when considering that a significant component to Petitioner's treatment is dependent upon his own will to alter his eating and exercise habits.  Petitioner's reluctance to make these important lifestyle changes should not be interpreted as a financial inability for treatment and, therefore, the Court will not consider them as such.[11]

The ALJ also considered Petitioner's daily activities in his credibility analysis - if a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may question that claimant's allegations.  *See Burch,* 400 F.3d at 681.  In contrast to Petitioner's claims of "fairly limited activities" and "need[ ] to nap and to lie down and relax half the month because he [is] either worn out or had a bad day due to pain in his legs" (AR 22), the ALJ revisited Petitioner's own 2006 "Function Report - Adult" (*see supra* at pp. 9-10 (citing AR 84)) where Petitioner stated that he "lived at a friend's house, watched TV, did some chores, helped friends and family to clean, [ ] occasionally helped others with errands . . . .

---

[11]  The ALJ further supported his credibility findings by pointing out Petitioner's failure to take advantage of low-cost medical treatment for his diabetes:

> [I]t is noted that the Social Security Administration pointed out to the claimant in the notice dated July 6, 2006 (contained in the case record) that Terry Reilly Health Services and the Family Practice Residency in Boise both offer medical help at little or no cost.

(AR 21 (citing AR 62) ("There are services in your community that may be able to help you in obtaining medications.  The Terry Reilly Health Services and the Family Practice Residency in Boise both offer medical help at little or no cost.")).

**MEMORANDUM DECISION AND ORDER - 17**

, hung out at a recovery club, played pool, . . . sometimes fished, visited with family and friends every day, and . . . regularly went to a social group at the recovery center." (AR 22 -23 (citing AR 84-91)).  The Court agrees with the ALJ, concluding that these daily activities indicate that Petitioner's symptoms are not as severe as alleged.  (AR 23).

Together, these reasons offer clear and convincing explanations as to why the ALJ did not find Petitioner's testimony entirely credible.  This is not to say, however, that this Court conclusively finds Petitioner not to be disabled under the applicable rules and regulations or that Petitioner does not suffer from chronic pain; indeed, as expected, Petitioner identifies conflicting evidence in support of his position.  While such conflicting evidence may not have been given the weight Petitioner would have preferred, it is clear that the ALJ's decision to doubt Petitioner's credibility in denying disability benefits is not without clear and convincing reasons for doing so.  As required by controlling law, the ALJ will not be second-guessed here.  *See Batson v. Comm'r of Social Security Admin.*, 359 F.3d 1190 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision."  (Internal citations omitted)).  Therefore, the Court will not substitute its judgment when the evidence in the record can support the ALJ's findings.

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

**MEMORANDUM DECISION AND ORDER - 18**

I am of the opinion that the evidence upon which the ALJ relied can reasonably and rationally support his well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation.  In fact, if I had been the finder-of-fact, I may well have reached a different conclusion; still, that is not the function of a federal judge reviewing a Social Security determination.

Accordingly, the ALJ's decisions as to the ALJ's consideration of Petitioner's residual functional capacity, as well as the ALJ's decisions as to Petitioner's credibility, were based on proper legal standards and supported by substantial evidence.  Therefore, I conclude that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

Accordingly, the Commissioner's decision is affirmed.

### V.  ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety, with prejudice.

DATED:  **March 25, 2010**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 19**